## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GABRIEL BOGDEN-COZMUTA, | : | |
| | : | |
| Plaintiff, | : | No. 3:20-cv-00879-VLB |
| | : | |
| v. | : | |
| | : | September 29, 2022 |
| GRANBY URGENT CARE, LLC; OCCUPATIONAL | : | |
| MEDICINE OF THE NORTHEAST LLC (DBA THE | : | |
| DOCTORS TREATMENT CENTER); BLOOMFIELD | : | |
| URGENT CARE LLC; AND STEPHEN A. KEI | : | |
| | : | |
| Defendants. | : | |

### MEMORANDUM OF DECISION DENYING
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. 38]

Gabriel Bogden-Cozmuta ("Plaintiff") brings this action against Occupational Medicine of the Northeast LLC ("OMNE") doing business as The Doctor's Treatment Center, Granby Urgent Care LLC ("Granby"), Bloomfield Urgent Care LLC ("Bloomfield") (collectively "Corporate Defendants"), and Stephen A. Kei ("Dr. Kei") (collectively with Corporate Defendants, "Defendants"), alleging Defendants retaliated against him in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*

Before the Court is Defendants' Motion for Summary Judgment. [Mot., Dkt. 38]. Defendants argue an entitlement to summary judgment on Plaintiff's FLSA retaliation claim because there is no genuine dispute of material fact that Plaintiff fails to establish the elements of a prima facie case of retaliation. Specifically, Defendants argue Plaintiff has failed to establish that Defendants' alleged retaliatory conduct rose to the level of an adverse employment action, nor is there a causal connection between Plaintiff's protected activity and the alleged adverse

1

employment action. Defendants argue that, even if Plaintiff suffered an adverse employment action, Defendants have provided legitimate, non-discriminatory reasons for their actions. Defendants argue, alternatively, they are entitled to summary judgment under the after-acquired evidence doctrine because they learned during discovery that Plaintiff's conduct during the final months of his employment was serious enough to warrant dismissal. Lastly, Defendants argue that Defendants Bloomfield, Grandy, and Dr. Kei cannot be jointly and severally liable because Plaintiff was not employment by them.

Plaintiff opposes, arguing this is a straightforward care of retaliation against Plaintiff for complaining internally and externally to the Connecticut Department of Labor ("DOL") about being owed overtime wages. [Opp., Dkt. 44]. Plaintiff argues that Defendants' actions after learning of Plaintiff's protected activity reveal their retaliatory animus. In addition, Plaintiff argues that the after-acquired evidence doctrine does not apply at summary judgment. Lastly, Plaintiff argues that all Defendants are Plaintiff's employer under the joint theory of employer liability.

For the following reasons, the Court DENIES Defendants' Motion for Summary Judgment.

## I. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no genuine factual disputes exist. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "Then the onus shifts to the party resisting summary

judgment to present evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008). "The non-moving party is required to 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id.*

> In determining whether the moving party is entitled to judgment as a matter of law--whether by summary judgment, or by a motion for judgment as a matter of law during or after trial . . . the district court may not properly consider the record in piecemeal fashion; rather, it must review all of the evidence in the record . . . . And in reviewing the evidence, the court must resolve all ambiguities in favor of the nonmoving party . . . [t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor, . . . even though contrary inferences might reasonably be drawn . . . .

*S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021) (internal citations and quotation marks omitted). On summary judgment, the court must ask "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## II.  BACKGROUND

The following facts are taken from the Local Rule 56 statements of material facts and evidence cited by the parties.[1]  The facts are read in the light most favorable to the non-movant, Plaintiff.  *See Liberty Lobby, Inc.*, 477 U.S. at 255.

---

[1] Local Rule 56(a)1 outlines the requirements for setting for each material facts as to which the moving party contends there is no genuine issued to be tried.  The party opposing summary judgment can respond the material facts listed by the movant in the 56(a)1 statement by either admitting or denying the fact.

> Each statement of material fact by a movant in a Local Rule 56(a)1 Statement or by an opponent in a Local Rule 56(a)2 Statement, and each denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to (1) the affidavit of a witness

OMNE, Granby, and Bloomfield are or were urgent care facilities that provide medical treatment to the public. [Defs.' 56(a)1 ¶ 1; Pl.'s 56(a)2 ¶ 1]. Dr. Stephen Kei is the owner, sole member, and medical director of the Corporate Defendants and Barabra Kei (Dr. Kei's wife) serves as the Corporate Defendants' Operations Manager. [Defs. 56(a)1 ¶ 1; Pl.'s 56(a)2 ¶ 2; Pl.'s Ex. 1 at PDF p.11–12, 67–68; Pl.'s Ex. 3 at PDF p.3]. In his role as owner, Dr. Kei primarily created the schedule for providers. [Pl.'s Ex. 1 at PDF p.10].

Plaintiff is a Physician Assistant (or "PA"). On or about March 14, 2016, Plaintiff entered into a Physician Assistant Services Agreement with OMNE for a Staff Physician Assistant Position. [Defs.' 56(a)1 ¶ 3; Pl.'s 56(a)2 ¶ 3]. Though Plaintiff only signed a contract with OMNE and only received pay checks issued by OMNE, he worked at the Bloomfield and Granby Urgent Care centers as well, and as scheduled by Dr. Kei. [Defs.' 56(a)1 ¶ 4; Pl.'s 56(a)2 ¶ 4; Pl.'s Ex. 1 at PDF p.10].

Plaintiff was unsatisfied with working for Dr. Kei and on June 7, 2018, Plaintiff resigned from his position as a Staff PA by letter with an effective date of September 6, 2018. [Pl.'s 56(a)2 p.9; Defs.' Ex. O]. Plaintiff states he made this decision because he was missing big events in his daughter's life due to erratic schedule changes. [*Id.*]. Shortly after he sent his letter of resignation, he met with Dr. and Mrs. Kei, where they discussed improving working conditions by hiring

---

competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial.
Local Rule 56(a)3. "Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1." *Id.*

more employees. [*Id.*]. Shortly thereafter a new PA was hired. [*Id.*]. On June 13, 2018, Plaintiff withdrew his resignation letter. [Defs.' Ex. Q].

Sometime prior to July 19, 2018, Plaintiff spoke with Mrs. Kei about Plaintiff's belief that he was entitled to unpaid overtime wages. *See* [Defs.' Ex. E]. On July 19, 2018, Plaintiff emailed Barbara Kei following up with her regarding their discussion about overtime wages. [*Id.*]. In the email, Plaintiff states that he hopes Defendants' lawyer had an opportunity to do some research into the issue and reach a conclusion. [*Id.*]. That same day, Dr. Kei sent a text message to Plaintiff with a link to the DOL's website regarding highly compensated professionals, suggesting Plaintiff was not entitled to overtime wages under this exception. [Defs.' Ex. F at PDF pp.24–25]. Plaintiff responded that this rule does not apply to PAs. [*Id.* at PDF p. 26]. In response, Dr. Kei asked: "Do you want your hours limited to 40/wk max?" [*Id.*]. Plaintiff did not respond in text message to that question. [*Id.*]. Three days later, Dr. Kei sent another link to a google search presumably on whether a physician assistant is exempt from overtime wage pay requirements. [*Id.*].

The next day, on July 20, 2018, Plaintiff filed his first complaint with the DOL alleging that OMNE, Granby, and Bloomfield failed to pay him wages for hours worked. [Pl.'s 56(a)2 ¶ 57].

During this time, in July 2018, Plaintiff's hours at the Bloomfield location were reduced.[2] [Defs.' 56(a)1 ¶ 8, 10–13; Pl.'s 56(a)2, 10–13]. Defendants claim the

---

[2] The parties do not agree on when the decision to reduce Plaintiff's hours at the Bloomfield location was made. [*Id.*]. Defendants claim the July 2018 work schedule came out before the July 2018 text correspondence. [Defs.' 56(a)1]. Defendants merely cite to Plaintiff's time sheets to support this claim. [*Id.*; Defs.' Ex. H].

motivation for reducing Plaintiff's hours at the Bloomfield location was because of the frequency in which Plaintiff's family visited him during working hours and the inordinate amounts of time Plaintiff's family spent in Bloomfield during those visits. [Def.'s 56(a)1 ¶ 16]. Plaintiff argues that the factual basis premised on the purported reason is untrue. Plaintiff testified during his deposition that his family did not visit him more than a couple of times a month, the visits were on average only 4 minutes long, and the visits were only for the purpose of bringing him some food. [Def.s' Ex. D at PDF pp. 43–49, 51–52]. One of Plaintiff's co-workers at OMNE submitted a declaration stating during the time he worked for OMNE with Plaintiff, Plaintiff's family never visited for more than 5 to 10 minutes. [Pl.'s Ex. 10]. Dr. Kei testified during his deposition that one of his employees reported watching Plaintiff's child on three or four prolonged periods of time that lasted 20 minutes to a half an hour. [Defs.' Ex. D PDF p.9]. Dr. Kei further testified he addressed the complaints about Plaintiff's family spending "inordinate times and leaving his childcare to [the] front desk person." [*Id.* at PDF p.10]. Barbara Kei also testified that an employee reported to her that Plaintiff's family was spending an inordinate amount of time at the office. [Defs.' Ex. B at PDF p.3]. However, Barbara Kei also testified that she spoke with Plaintiff about the reports, after which the visits were less frequent. [*Id.* at PDF pp. 10–11].

In mid-August 2018, Plaintiff called the DOL to find out the status of his complaint and was told it had not been assigned to a staff member. [Pl.'s 56(a)2 ¶

Plaintiff's time sheets do not provide information on when the July 2018 schedule came out. [Defs.' Ex. H]. Thus, Defendants have not proven that Plaintiff's hours were reduced prior to his wage complaints.

58].  Plaintiff called the DOL a second time on September 11, 2018 and was told that his paperwork from the July complaint had been lost.  [*Id.*].  The next day, on September 12, 2018, Plaintiff filed a second complaint with the DOL.  [Pl.'s 56(a)2 at ¶ 59].

On October 15, 2018, Plaintiff sent Mrs. Kei an email telling her that he was "talking to an agent from the [DOL], in regards to overtime . . . In order to get a definitive/official answer, they will have to perform an investigation I don't want to start on that route yet, so the agent said that he will gladly talk to you about this . . . ."  [Pl.'s 56(a)2 ¶ 60].  On October 19, 2018, Plaintiff followed up by email with Mrs. Kei asking for an update.  [Pl.'s 56(a)2 ¶ 61.].  On October 24, 2018, Plaintiff asked the DOL investigator to begin investigating the Corporate Defendants for overtime violations.  [Pl.'s 56(a)2 ¶ 62].  On November 2, 2018, the DOL came to the OMNE office to collect payroll records for OMNE and Granby for the years 2016 through 2018.  [Pl.'s 56(a)2 ¶ 63].  After reviewing payroll records, the DOL found that OMNE owed a total of $38,428.87 in wages and interest to three employees.  [Pl.'s 56(a)2 ¶ 65].  Of the amount due, the DOL found that OMNE owed $34,532.47 in wages and interest to Plaintiff.  [*Id.*].  Around the time of the DOL investigation and findings, another employee claims to have heard Mrs. Kei call Plaintiff a "pot stirrer" and Dr. Kei said Plaintiff was "a 'problem' who stirred things up."  [Pl.'s' Ex 5 ¶¶ 8–9].

On November 14, 2018, Plaintiff texted Dr. Kei stating that another employee was going to cover his second half of the day in Grandy because Plaintiff was not feeling well.  [Defs.' Ex. F at PDF p. 44].  Plaintiff finding coverage for his missed

scheduled shift was common practice among staff according to Dr. Kei, but he requested the employees go through him.  [Defs.' Ex. A at PDF p. 5].

On November 26, 2018, Plaintiff emailed the DOL investigator stating a concern that he was being retaliated against by Defendants, stating specifically that he felt his employer begun micromanaging him.  [Pl.'s 56(a)2 ¶ 64].

On November 27, 2018 at about 9:00PM, Plaintiff texted Dr. Kei calling out for his shift the next day because he was feeling sick.  [Defs.' Ex. F at PDF p.48].  Two days later, Plaintiff traveled to Florida to close on a home he purchased there.[3] [Defs.' Ex. M at PDF p.7].  It is unclear whether Plaintiff was in Florida when he texted Dr. Kei claiming to be sick.  [Defs.' Ex. L at PDF p.9–10].

On December 5, 2018 at about 6:00PM, Plaintiff texted Dr. Kei calling out for his shift the next day "due to unforeseen health problems."  [Defs.' Ex. F at PDF p.49].  Dr. Kei responded that Plaintiff's repeated absenteeism was not acceptable, he was expected to work is scheduled shift the next day, and told Plaintiff to call him.  [*Id.*].  Following that text, Dr. Kei stated that he was able to find someone to cover Plaintiff's morning shift and was still looking for someone to cover the afternoon shift.  [*Id.* at PDF p. 50].  The next day, Dr. Kei texted Plaintiff that he was concerned about Plaintiff's health problems and Dr. Kei's ability to keep the clinics up and running.  [*Id.*].  Though Plaintiff told Dr. Kei he could not work his scheduled shift because he was ill, on December 5 through December 11, 2018, Plaintiff was in Florida moving his wife and daughter into their new home.  [Defs.' Ex. M at PDF p.6].

---

[3] In late September 2018, Plaintiff purchased a home in Florida.  [Defs.' Ex. M at PDF p.7].

On December 6, 2018, Dr. Kei issued a disciplinary letter to Plaintiff. [Defs.' Ex. K]. The letter lists three instances of Plaintiff taking "unexcused absences" on November 14, 2018, November 27, 2018, and December 5, 2018. [*Id.*]. The letter also indicates that Plaintiff was directed to call Dr. Kei to discuss his absences, but Plaintiff did not and that this was not the first time Plaintiff was unresponsive. [*Id.*].

On December 7, 2018 at about 9:30PM, Plaintiff texted Dr. Kei that he was not going to be able to work the next day because he "[s]till [is] not 100% ready to be on [his] feet for long [periods of] time." [Defs.' Ex. F at PDF p.52]. Again, during this time, Plaintiff was in Florida moving his family. [Defs.' Ex. M at PDF p.6].

On December 12, 2018, Plaintiff received a job offer for a position with another urgent care in Connecticut. [Defs.' Ex. D at PDF p. 96–98]. On December 16, 2018, Plaintiff sent a letter to Dr. Kei, where he stated "I decided to end my full time employment with the Doctors Treatment Center and its affiliate offices and companies. This letter will serve as my 90 day notice as required per the employment contract I signed in 2016." [Defs.' Ex. D at PDF pp. 85–86; Defs.' Ex. N]. Plaintiff claims he sent this letter to "raise a flag that [he] need[ed] to talk to someone," like he did in June 2016. [*Id.*].

On December 23, 2018 at about 8:20PM, Plaintiff texted Dr. Kei calling out of work the next day because he was "sick" with what looks like pneumonia. [Defs.' Ex. F at PDF pp.57–58]. It is unknown whether Plaintiff was in Connecticut or not, but it is known that Plaintiff was in Florida at least two days after calling out "sick." [Defs.' 56(a)1 ¶ 32; Pl.'s 56(a)2 ¶ 32].

Around this time, Dr. Kei was told by other staff members that Plaintiff bought a home in Florida and may be working there.  [Pl.'s Ex. 1 at PDF pp.30–31].  Dr. Kei claims that, based on this information, he did not expect Plaintiff to continue to work for him in January 2019.  [*Id.*].

On December 29, 2018, Plaintiff texted Dr. Kei: "hello. Due to unforeseen circumstances [I] will be unable to be at work tomorrow and after tomorrow. Sorry for the inconvenience."  [Defs.' Ex. F at PDF p.59].  In response, Dr. Kei texted Plaintiff: "Do you actually want to be in breach of your contract? Please call me now."  [Defs.' Ex. F at PDF p.60].  Then Dr. Kei sent a text message that said:

> Based on your increasingly erratic [temperament], comportment, and professionalism if you continue to that end by not replying and not showing up for your shifts tomorrow and Monday we will be forced by law to contact the State Licensing board to investigate your ability to be a licenses PA.  Your role in our or any organization as a medical professional is a matter of public safety.  By law in 2015 requires mandatory report.

[Defs.' Ex. F at PDF pp. 60–61].

On December 31, 2018, Dr. Kei—signing as the medical director of OMNE—sent a letter to Plaintiff accepting Plaintiff's notice of resignation dated December 29, 2018 effective immediately.  [Defs.' Ex. Q].  The letter states: "Please be advised that this resignation has been accepted effective December 29, 2018, in lieu of a termination for cause, for among other reasons, your repeated failure to show for work."  [*Id.*].  Plaintiff did not respond to this letter, and only communicated with Dr. Kei again on January 25, 2019, when he asked for Dr. Kei to renew a prescription for Plaintiff's wife.  [Defs.' 56(a)1; Pl.'s 56(a)2].

Plaintiff continued to work in Connecticut until July 2020.  [Pl.'s 56(a)2 ¶ 99].

On June 25, 2020, Plaintiff brought this suit against Defendants raising a single count of retaliation in violation of the FLSA. [Compl., Dkt. 1].

III.    Discussion

The FLSA prohibits any person from "discharg[ing] or in any other manner discriminat[ing] against an employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . ." 29 U.S.C. § 215(a)(3). "[T]he remedial nature of the FLSA warrants an expansive interpretation of its provisions so that they will have the widest possible impact in the national economy." *Greathorse v. JHS Sec. Inc.*, 784 F.3d 105, 113–14 (2d Cir. 2015) (citations omitted).  "FLSA retaliation claims are subject to the three-step burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010).  *See also Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 471 (S.D.N.Y. 2008) (finding that FLSA retaliation claims are governed by the same legal analysis applicable to retaliation claims under Title VII).

To survive summary judgment, the plaintiff must establish a prima facie FLSA retaliation claim, which requires proof of the following: "(1) participation in protected activity known to the defendant . . . ; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action."  *Id.*  Plaintiff's burden of proof at the prima facie stage is "de minimis."  *Weinstock v. Columbia University*, 224 F.3d 33, 42 (2d Cir. 2000). "Once the plaintiff establishes a prima facie case of FLSA retaliation, the burden shifts to the defendant to articulate a 'legitimate, non-

discriminatory reason for the employment action.'" *Mullins*, 626 F.3d at 53. "If the defendant puts forth such a reason, the plaintiff must demonstrate that there is sufficient evidence for a reasonable juror to find that the reason offered by the defendant is mere pretext for retaliation." *Torres*, 628 F. Supp. 2d at 472.

There is no dispute that Plaintiff can satisfy the first element for a prima facie FLSA retaliation claim—that he engaged in a protected activity known by Defendants. Plaintiff informed Defendants that they were violating the FLSA by failing to properly pay him overtime wages. *See Greaterhouse v. JHS Sec. Inc.*, 784 F.3d 105, 114 (2d Cir. 2015) (holding that "filed any complaint" requirement under the FLSA includes lodging an internal complaint with an employer). This includes his verbal complaints to Mrs. Kei in July 2018, the text message complaints to Dr. Kei in July 2018, the face-to-face conversations with the Keis during the summer of 2018, the filing of external complaints with the DOL in July and September 2018, and the emails alerting Mrs. Kei of the DOL complaints in October 2018. These events constitute Plaintiff's participation in protected activity known to Defendants, satisfying the first element of a prima facie case of FLSA retaliation.

The parties dispute whether Plaintiff can establish the second and third elements; namely that Defendants subjected Plaintiff to an employment action disadvantaging him and that there is a causal connection between Plaintiff's complaints and the adverse employment action.

A.    Adverse Employment Action

Plaintiff argues that Defendants subjected him to four adverse employment actions: (1) reducing Plaintiff's overall hours, (2) issuing a disciplinary memo, (3)

threatening to report Plaintiff to the state licensing board, and (4) terminating Plaintiff.   Defendant argues none of these events constitute an adverse employment action.

To establish an adverse employment action for an FLSA retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citations omitted).   Whether an action is materially adverse is to be viewed objectively and measured from "the perspective of a reasonable person in the plaintiff's position . . . ." *Id.* at 69–71.   "Alleged acts of retaliation must be evaluated both separately and in the aggregate, as even trivial acts may take on greater significance when they are viewed as part of a larger course of conduct." *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011).   "[P]etty slights, minor annoyances, and simple lack of good manners are not adverse employment actions." *Burlington N.*, 548 U.S. at 68. An adverse employment action in the context of a retaliation claim "covers a broader range of conduct than does the adverse-action standard for claims of discrimination . . . ." *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (citing to *Burlington N.*, 548 U.S. at 64).

1.      Reduction in Hours

Plaintiff argues that Defendants subjected him to an adverse employment action when they reduced his hours at the Bloomfield location and in general,

following his overtime wage complaints.  Defendants argue that the reduction in hours at the Bloomfield location and the reduction in hours generally do not constitute an adverse employment action.

First, with respect to the reduction in hours at the Bloomfield location, Defendants argue the reduction in hours began before Plaintiff's protected activity, that it constitutes a lateral transfer—which Defendants claim is not actionable according to *Davis v. State, Department of Corrections*, 2017 WL 6417838, at *1 (Conn. Supr. Ct. Nov. 21, 2017) and *Galabya v. N.Y. City Bd. Of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)—, and Plaintiff testified there is a lack of appreciable difference in commutes between the locations.  Defendants provide no proof that the reduction in hours occurred before the protected activity, rather they merely cite to time sheets that do not show when the July 2018 schedule was released.  Thus, Defendants' factual contention is rejected.  While *Davis* and *Galaya* rely on case law that came out before the Supreme Court's decision in *Burlington Northern*, the Court need not engage in a critique of those cases because, even under the standard announced in *Burlington Northern*, Plaintiff cannot establish a reduction in hours at the Bloomfield location constitutes an adverse employment action. This is because Plaintiff testified he had no preference in terms of what location he worked at.  [Defs.' Ex. D at PDF p.10].  A reasonable employee in Plaintiff's position would not find that a change in location, where there is no appreciable difference between the locations, constitutes an adverse employment action.

However, even though the reduction in hours at the Bloomfield location alone does not constitute an adverse employment action, Plaintiff's reduction in

hours generally does.  Defendants only argument as to why the reduction in overall hours does not constitute an adverse employment action is that Plaintiff's overall hours remained above the contract rate of 38.5 hours per week, and they had no legal requirement to provide Plaintiff with overtime hours.  Though Defendants are right in the sense that an employer has no obligation generally to provide an employee with overtime wages, an adverse employment action is not measured from what an employer's base legal responsibility is.   Rather, an adverse employment action is measured by whether it would dissuade a reasonable worker in the plaintiff's position from engaging in protected activity.  *See supra*.  Here, before Plaintiff engaged in the protected activity, he was working significantly more hours and thus making significantly more money.  Then, after Plaintiff engaged in protected activity, his hours were cut and thus he made less money.  This is enough to dissuade a reasonable worker from engaging in protected activity.  Whether Defendants' motivation in reducing the hours was for something other than retaliation, such as avoiding paying overtime wages they previously did not pay, goes to a different element of an FLSA retaliation claim.  For now, there is enough evidence for a reasonable jury to find that the reduction in Plaintiff's hours after he engaged in protected activity constitutes and adverse employment action.

2.    **Disciplinary Memo**

Next, Plaintiff argues that the disciplinary memo constitutes an adverse employment action, citing to *Millea v. Metro North R. Co.*, 658 F.3d 154, 165 (2d Cir. 2011) for the proposition that a letter of reprimand can trigger liability even when there is no monetary loss sustained.  Defendant argues that the disciplinary memo

does not constitute an adverse employment action pursuant to *Arnone v. Town of Enfield*, 79 Conn. App. 501, 510 (2003) because the memo was not accompanied by wage or job loss.

In *Millea*, the Second Circuit explained that:

> A formal reprimand issued by an employer is not a "petty slight," "minor annoyance," or "trivial" punishment; it can reduce an employee's likelihood of receiving future bonuses, raises, and promotions, and it may lead the employee to believe (correctly or not) that his job is in jeopardy. A reasonable jury could conclude as much even when, as here, the letter does not directly or immediately result in any loss of wages or benefits, and does not remain in the employment file permanently.

658 F.3d at 165.  Hereto, a reasonable jury could find that the disciplinary memo constitutes an adverse employment action for the same reasons detailed in *Millea*. *Id.*

Defendants' reliance on *Arnone* for the proposition that a discipline or warning can be sufficient to constitute an adverse employment action *only* where it is accompanied by wage or job loss is a misrepresentation of the case and borders on a violation of the Rules of Professional Conduct for lack of candor to the tribunal.  *Arnone* not only does not stand for the proposition Defendant claims it does, *Arnone* does not even involve an adverse employment action issue.  79 Conn. App. 501.  The court rejects Defendants' argument and finds that reasonable jurors could find that the disciplinary memo constitutes an adverse employment action.

### 3.     Threatening to Report Plaintiff to State Licensing Board

Plaintiff argues that Dr. Kei's threat to report Plaintiff to the state licensing board constitutes an adverse employment action, citing to *Cox v. Onondaga Cty.*

*Sheriff's Dep't*, 760 F.3d 139, 147 (2d Cir. 2014).  Defendant merely argues that Plaintiff cannot demonstrate that Dr. Kei's alleged threat to report him to the state licensing board resulted in a disruptive change to his working condition and thus does not constitute an adverse employment action.

It is difficult to see how threatening to report Plaintiff to the state licensing board, who presumably has the ability to revoke Plaintiff's license and thus impede his ability to work in his profession, could not be an adverse employment action. A reasonable employee could be dissuaded from engaging in protected speech if they knew their employer would take steps to limit their ability to work in their profession, regardless of whether those efforts are successful.  Defendants provide no legal authority to support their position that a lack of disruptive change is dispositive on whether the conduct constitutes an adverse employment action. The Supreme Court has rejected similar attempts to draw bright lines between actions that do and do not satisfy the adverse employment action, finding that the antiretaliation provision "is simply not reducible to a comprehensive set of clear rules." *Thompson v. North American Stainless,* LP, 562 U.S. 170, 175 (2011).  The Court rejects Defendants' argument and finds reasonable jurors could find that Dr. Kei's threat to repot Plaintiff to the state licensing board constitutes an adverse employment action.

### 4.    Terminating Plaintiff

Plaintiff argues that the final adverse employment action taken against him was his termination.  While the parties do not dispute that a termination constitutes an adverse employment action, there is a factual dispute between the parties as to

whether Plaintiff was terminated or if he voluntarily resigned.  Defendants point to Plaintiff's December 29, 2018 text message to Dr. Kei, where he stated: "due to unforeseen circumstances I will be unable to be at work tomorrow and after tomorrow."  Defendants argue that "after tomorrow" means in perpetuity and thus Plaintiff resigned.  Plaintiff argues that "after tomorrow" simply meant the day after tomorrow.   A reasonable juror could find Plaintiff was not resigning and Defendant's follow up letter, which stated it was accepting Plaintiff's resignation "in lieu of termination" was in effect Defendant manipulating the situation and terminating Plaintiff.  Thus, whether Plaintiff was terminated is a genuine dispute of material fact to be decided at trial.

Therefore, the Court finds Plaintiff has presented sufficient evidence to satisfy the second element of its prima facie FLSA retaliation claim for the purpose of overcoming Defendants' motion.

### B.    Causation

Defendants argue that Plaintiff has not presented evidence sufficient to satisfy the third element of an FLSA retaliation claim, which requires a causal connection between the protected activity and the adverse employment action. Plaintiff argues that the temporal proximity, coupled with the Keis's statements about Plaintiff being a "pot stirrer" and a "problem," satisfy the third element for the purpose of summary judgment.

 "A plaintiff alleging that an employment decision was motivated both by legitimate and illegitimate reasons may establish that the 'impermissible factor was a motivating factor, without proving that the employer's proffered explanation was

not some part of the employer's motivation.'"  *Holcomb v. Iona Coll.*, 521 F.3d 130, 142 (2d Cir. 2008).  "The causal connection needed for proof of a retaliation claim 'can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.'"  *Cifra v. G.E. Co.*, 252 F.3d 205, 217 (2d Cir. 2001).  *See also Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 845 (2d Cir. 2013).  "Though [the Second Circuit] has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, [the Second Circuit has] previously held that five months is not too long to find the causal relationship." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (citing to *Gorman-Bakos v. Cornell Coop. Extension of Schenectady County*, 252 F.3d 545, 555 (2d Cir. 2001)).

Here, the Court finds there is a genuine dispute of whether Defendants were motivated by Plaintiff's wage complaints in taking the adverse actions discussed above.  At this stage, the temporal proximity between the protected activity and the adverse action is sufficient to satisfy this element. All the adverse actions began and continued after Plaintiff's initial internal complaint.   The initial complaint occurred in July 2018, the same month Plaintiff's hours were beginning to be reduced.  Following the initial complaint, Plaintiff continued to speak with the Keis about his complaint and filed two DOL complaints.   During this time, Plaintiff's hours continued to be reduced.   Then, when the DOL found Defendants owed Plaintiff over $30,000 in unpaid overtime wages, approximately a week later Defendants issued the disciplinary memo.  Lastly, approximately one month after

the DOL's findings, Dr. Kei threatened to report Plaintiff to the state licensing board and Plaintiff was terminated.  This evidence of temporal proximity is sufficient to satisfy Plaintiff's de minimis burden in establishing a causal connection between the protected activity and the adverse employment action.

Therefore, Plaintiff has met his burden of setting forth a prima facie case of FLSA retaliation.

### C.      Legitimate, Nonretaliatory Reason

Now that Plaintiff has met his burden of setting forth a prima facie case, the burden now shifts to Defendants to set forth a legitimate, nonretaliatory reason for the employment actions.  The burden on the defendant is to rebut the presumption of retaliation by producing legally sufficient motivation for the actions taken.  *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981).  "The defendant need not persuade the court that it was actually motivated by the proffered reasons."  *Id.* at 255.

Defendants argue that the reason they reduced Plaintiff's hours was because they learned they would have to pay a higher overtime wage to Plaintiff. Defendants argue that the reasons for the disciplinary memo and Plaintiff's termination was due to Plaintiff's repeated unexcused absences and Plaintiff's failure to communicate with his employer.  Lastly, Defendants argue that Dr. Kei threatened to report Plaintiff to the state licensing board because he believed Plaintiff's conduct in failing to report to scheduled shifts jeopardized public health. Plaintiff does not argue that Defendants purported reasons do not satisfy

Defendants' burden.  Defendants' proffered reasons are both legitimate, in that they are reasonable explanations for its actions, and are nonretaliatory.

Therefore, the Court finds that Defendants have sufficiently articulated legitimate, non-discriminatory reasons for the employment actions for the purpose shifting the burden back to Plaintiff.

### D.   Pretext

Now that Defendants have put forth legitimate, nonretaliatory reasons for their employment actions, Plaintiff must demonstrate that there is sufficient evidence for a reasonable juror to find that the reasons offered by Defendants is mere pretext for retaliation.  *See supra*.

"A plaintiff alleging that an employment decision was motivated both by legitimate and illegitimate reasons may establish that the 'impermissible factor was a motivating factor, without proving that the employer's proffered explanation was not some part of the employer's motivation.'"  *Holcomb v. Iona Coll.*, 521 F.3d 130, 142 (2d Cir. 2008).  "[A] trial court should exercise caution when granting summary judgment to an employer where, as here, its intent is a genuine factual issue."  *Carlton v. Mystic Transp., Inc.* 202 F.3d 129, 134 (2d Cir. 2000).  *See also Halcomb*, 5201 F.3d at 137.

Here, it is too close to find retaliation was not a motivating factor.  The timing of the adverse actions lends significant support to a finding that retaliation was a motivating factor, particularly the timing between the disciplinary letter and the termination, which occurred quickly after the completion of the DOL investigation.  In addition, Defendants were significantly impacted by the result of Plaintiff's

protected activity having been required to pay Plaintiff over $30,000 in back wages. This is not the kind of case with a minor complaint that could have been unnoticed or just generally unimpactful.  The fact that Defendants owed Plaintiff thousands of dollars due to Plaintiff engaging in protected activity reasonably were in the minds of the Defendants when they acted against Plaintiff.  Whether Defendants were motivated by this factor is to be decided at trial.

Therefore, Plaintiff has presented sufficient evidence to satisfy every element of his FLSA retaliation claim in order to overcome Defendants' motion for summary judgment.

### E.      After-Acquired Evidence Doctrine

Defendants argue they are entitled to summary judgment on Plaintiff's claim under the "after-acquired evidence doctrine."  Defendants cite to *McKennon v. Nashville Banner Pub. Co*., 513 U.S. 352, 362–63 (1995) for the proposition that the after-acquired evidence doctrine applies where an employer can establish that an employee's wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of discharge.  *McKennon* does not apply the after-acquired evidence doctrine for the purpose of determining liability, rather the doctrine is applicable when determining damages.  This is the second example of Defendants citing to legal authority for a proposition it does not support.  The Court rejects Defendants argument and finds Defendant is not entitled to summary judgment.

F.      Joint Liability

Plaintiff's FLSA retaliation claim is brought against all Defendants—OMNE,

Bloomfield, Granby, and Dr. Kei—under the joint employment theory.

"A conclusion that employers are 'joint' assumes that they are separate legal

entities, but that they . . . handle certain aspects of their employer-employee

relationship jointly." *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d

Cir. 2005).

> Where this doctrine is operative, an employee, formally employed by
> one entity, who has been assigned to work in circumstances that
> justify the conclusion that the employee is at the same time
> constructively employed by another entity, may impose liability for
> violations of employment law on the constructive employer, on the
> theory that this other entity is the employee's joint employer.

*Id.*

> The joint employer theory of liability consists of a four factor test 'to
> determine whether two or more employers can be treated as one for
> the purposes of assigning liability.' . . . The four factors are '(1)
> interrelation of operations, (2) centralized control of labor relations, (3)
> common management, and (4) common ownership or financial
> control.'

*Hajela v. ING Groep, N.V.*, 582 F. Supp. 2d 227, 236–37 (D. Conn. 2008) (citing to

*Gulino v. New York State Ed. Dept.,* 460 F.3d 361, 378 (2d Cir. 2006)).  "Most courts

focus their inquiry on the second factor."  *Id.*

Defendants argue there is no genuine issue of material fact that Bloomfield,

Granby, or Dr. Kei were not joint employers of Plaintiff.  Specifically, Defendants

argue that Plaintiff was only employed by OMNE as it is the only entity with which

Plaintiff contracted with and it was the only entity subject to the DOL investigation.

Plaintiff objects, arguing that Dr. Kei and all Corporate Defendants were Plaintiff's

employers for the purpose of its claim because OMNE exercised extraordinary control over Bloomfield and Granby, and Dr. Kei as an individual constitutes as an employer under the FLSA definition.

Plaintiff has set forth sufficient evidence to establish that Defendants can all be liable under the joint employer theory of liability due to how intertwined the entity defendants are, particularly with respect to Plaintiff.  OMNE, Bloomfield, and Granby are all single member LLCs, all owned by Dr. Kei, who were engaged in the business of providing urgent medical services during Plaintiff's employment. These three entities were closely intertwined, evidenced by the fact that Plaintiff worked at all three locations without needing a new employment contract for each. Nor was there any written agreement where Plaintiff's services at Bloomfield or Granby would be paid for to OMNE.  Further, while Defendants argue that the DOL investigation was only into OMNE and not the other Corporate Defendants, Defendants paid the DOL fine from accounts in both OMNE and Bloomfields name, which evidences how financially intertwined these corporations are.  Dr. Kei easily fits the FLSA definition of "employer" as he was solely responsible for hiring, firing, and supervision of all medical provides, virtually all of whom worked at all three locations.

Therefore, the Court rejects Defendants' argument that Bloomfield, Granby, and Dr. Kei cannot be found to be joint employers for the purpose of Plaintiff's FLSA claim.

### IV. Conclusion

For the reasons stated above, the Court DENIES Defendants' Motion for Summary Judgment.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated this day in Hartford, Connecticut: September 29, 2022